Honorable Robert J. Bryan

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | | |
|---|---|---|
| **COLUMBIA RIVERKEEPER**, a Washington non-profit corporation, | ) ) ) | No. 3:09-cv-05578-RJB |
| Plaintiff, | ) ) | **CONSENT DECREE** |
| v. | ) ) | |
| **RSG FOREST PRODUCTS, INC.**, a Washington corporation, | ) ) ) ) | |
| Defendant. | ) ) | |

Columbia Riverkeeper ("Plaintiff") and RSG Forest Products, Inc. ("Defendant") hereafter collectively the "Parties" enter into the following Consent Decree:

WHEREAS, Plaintiff filed a Complaint against Defendant on September 24, 2009, alleging violations of the Clean Water Act, 33 U.S.C. § 1251 et seq., relating to discharges of stormwater from Defendant's facility located in Kalama, Washington, and seeking declaratory and injunctive relief, civil penalties and attorneys' fees and costs;

WHEREAS, Defendant denies any fault, wrongdoing, or liability for all claims alleged by Plaintiff in this action;

WHEREAS, Plaintiff and Defendant agree that settlement of these matters is in the best interest of the Parties and the public, and that entry of this Consent Decree without additional

litigation is the most appropriate means of resolving this action; and

WHEREAS, Plaintiff, Defendant, and their respective counsel consent to entry of this Decree without trial, adjudication, or admission of any issue of fact or law with respect to Plaintiff's claims or allegations and without admission of any fact, allegations, or legal argument contained in Plaintiff's sixty (60) day notice or Complaint in this action.

NOW THEREFORE, upon consideration of the mutual promises herein contained, it is hereby

ORDERED, ADJUDGED AND DECREED as follows:

1. This Court has jurisdiction over the Parties and the subject matter of this action.

2. The undersigned representative for each Party certifies that he or she is fully authorized by the Party whom he or she represents to enter into the terms and conditions of this Consent Decree and to legally bind the Party or Parties and their successors in interest to it.

3. This Consent Decree shall apply to, and be binding upon, the Parties, and upon the successors and assigns of the Parties.

4. This Consent Decree shall apply to Defendant's operation and/or oversight of its facility located at or about 985 2nd Street NW, Kalama, WA 98625 (the "Facility").

5. This Consent Decree is intended to be and shall constitute the exclusive remedy and a full and complete settlement of the claims alleged in the Complaint in this case and all other known and unknown claims existing as of the date of entry of this Consent Decree that could be asserted by Plaintiff under the Clean Water Act, 33 U.S.C. §§ 1251-1387, arising from operations at the Facility, which claims are released and dismissed with prejudice.  Plaintiff's exclusive remedy for any violation of the terms of this Consent Decree shall be enforcement of this Consent Decree.

6. This Consent Decree is a settlement of disputed facts and law, and shall not constitute evidence in any proceeding, an admission or adjudication with respect to any allegation of the Complaint, any fact or conclusion of law with respect to any matter alleged in or arising out of the Complaint, or admissions or evidence of any wrongdoing or misconduct on the part of the Defendant or any successor.

7. In full and complete satisfaction of the claims covered by the Complaint and all other claims covered by this Consent Decree as described in Paragraph 5, Defendant agrees to comply with the following terms and conditions:

    a. During the time period from when this Consent Decree is entered to when the Project described in paragraph 7.b. is fully operational, Defendant shall engage in the following interim measures:

        i. Store all galvanized materials either in Defendant's buildings or outside under cover;

        ii. Implement a truck driver protocol limiting turns on-site to minimize potential zinc deposition in the truck stop area;

        iii. Equip all outfalls with baskets containing filter fabric to capture runoff and replace the filter fabric on a routine basis;

        iv. Equip all stormwater drains, except those stormwater drains identified by an "X" on Exhibit 1, with a downturned elbow pipe to reduce turbidity and maintain each pipe as necessary. Equip with filter fabric those stormwater drains identified by an "X" on Exhibit 1;

        v. Create and maintain elevated rims around stormwater drains not located in traffic areas to help remove sawdust and other matter from stormwater.

Equip with filter fabric those stormwater drains located in traffic areas which are identified by a "Y" on Exhibit 1;

vi. Utilize a street-sweeper bi-weekly to keep the Facility clear of sawdust and other debris;

vii. The above best management practices (BMPs) are designed to reduce pollution discharges.  To the extent these practices are not successful in so doing, RSG will implement additional reasonable measures recommended by its storm water engineer or consultant to ensure compliance with the permit violations noticed by Plaintiff and included in the Complaint.

The requirements contained in this paragraph 7.a. shall terminate when Defendant provides Plaintiff with notification that the Project (described in paragraph 7.b.) is fully operational.

b. Defendant shall implement a Stormwater Management Plan ("Project") to eliminate stormwater runoff from the Facility during rainfall amounts of up to a five (5) – year storm event.  The Project is described in Exhibit 2.  The Project will be implemented within a year and a half from the effective date of this Consent Decree.  After the Project is fully operational, Defendant will provide written notice to Plaintiff.  Defendant shall inform Plaintiff if it becomes clear that the Project cannot be implemented within a year and a half from the effective date of this Consent Decree, and the Parties will endeavor to work out an alternative as proposed in paragraph 11.

c. Defendant will continue to hold a Permit and will implement the following best management practices to address the discharge of pollutants that may occur during rainfall amounts of more than five (5) –year storm events:

      i.      Utilize a street-sweeper to remove sawdust and other debris from the Facility at least monthly;

      ii.      Maintain previously installed elevated rims around stormwater drains, stand pipes, and filter baskets; and

      iii.      The above best management practices (BMPs) are designed to reduce pollution discharges. To the extent these practices are not successful in so doing, RSG will implement additional reasonable measures recommended by its storm water engineer or consultant to ensure compliance with the permit violations noticed by Plaintiff and included in the Complaint.

    d.    Defendant shall, for a period of three years beginning on the effective date of this Consent Decree, forward to Plaintiff copies of Discharge Monitoring Reports, Level One, Two, or Three response reports for the Facility submitted by Defendant to the State of Washington Department of Ecology pursuant to the National Pollutant Discharge Elimination System Industrial Stormwater General Permit ("Permit"). All copies shall be forwarded to Plaintiff on a quarterly basis and not later than the forty-five (45) days following the end of each calendar quarter;

    e.    Not later than ninety (90) days after the effective date of this Consent Decree, Defendant shall make a payment in the amount of $20,000 to the Lower Columbia River Estuary Partnership for the Kalama Service Learning and Community Volunteer Project that is described in Exhibit 3 to this Consent Decree. Such payment shall be made by check payable and mailed to the Lower Columbia River Estuary Partnership, 811 SW Naito Parkway Suite 410, Portland, Oregon 97204, Attn: Debrah Marriot, Executive Director, and bear the notation "Columbia Riverkeeper v. RSG Forest

Products, Inc., Clean Water Act Settlement," with a copy to Plaintiff;

   f. Within ninety (90) days of the effective date of this Consent Decree, Defendant shall pay Plaintiff's reasonable attorneys' fees and costs in the amount of $24,440.80 by check payable and mailed to Crag Law Center, 917 SW Oak Street, Suite 417, Portland, OR 97205, Attn: Tanya Sanerib.  This payment shall constitute full and complete satisfaction of any claims Plaintiff may have under the Clean Water Act for attorneys' fees and costs.

 8. Defendant shall comply with all terms and conditions of this Consent Decree within the time periods specified herein.

 9. If any Force Majeure Event that Defendant is unable to overcome with reasonable diligence causes a delay in complying with this Consent Decree within the time periods specified herein, such delay shall not constitute a failure to comply with the terms of this Consent Decree, provided that Defendant submits written notification to Plaintiff no later than fifteen (15) days after the date that Defendant first concludes that such event has caused or will cause a delay in complying with this Consent Decree.  Such notice to Plaintiff shall describe the length or anticipated length of the delay, the precise circumstances causing the delay, the measures taken or to be taken to prevent or minimize non-compliance, and a schedule for implementation of the measure to be taken.

   a. A force majeure event includes but is not limited to the following:

    i. Acts of God, war, insurrection, or civil disturbance;

    ii. Earthquakes, landslides, fire, floods;

    iii. Actions or inactions of third parties over which Defendant has no control;

6

    iv.  Adverse weather conditions or unusual delay in transportation;

    v.  Strikes; and

    vi.  Any other litigation or arbitration or mediation that causes delay.

  b. In the event that Defendant fails to comply or anticipates failing to comply with this Consent Decree within the time frames specified herein because of a Force Majeure Event and has notified Plaintiff as provided in this Consent Decree, Defendant's failure to comply shall not be a violation of this Consent Decree and shall not result in any liability or other sanctions. In such event, the milestone date(s) shall be extended for a reasonable period of time following the Force Majeure Event.

 10. The Court shall retain jurisdiction over this matter until termination of this Consent Decree as provided in Paragraph 12 and allow this case to be reopened without a filing fee for the purpose of allowing the parties to apply to the Court for any further order that may be necessary to construe, carry out, enforce compliance with, and/or resolve any dispute regarding the terms or conditions of this Consent Decree. In the event of a dispute regarding implementation of, or compliance with, this Consent Decree, the Parties shall first attempt to informally resolve the dispute through meetings between the Parties by either Party serving written notice of request for resolution to the other Party and their counsel of record. If no resolution is reached within thirty (30) days from the date that the notice of dispute is served, the Parties may resolve the dispute by filing motions with the Court.

 11. The Parties recognize that no consent decree can be entered in a Clean Water Act suit in which the United States is not a party prior to forty-five (45) days following the receipt of a copy of the proposed consent decree by the United States Attorney General and the Administrator of the United States Environmental Protection Agency pursuant to 33 U.S.C. §

1365(c)(3).  Therefore, upon the signing of this Consent Decree by the parties, Plaintiff shall serve copies of the Consent Decree upon the Administrator of the United States Environmental Protection Agency and the United States Attorney General.

12. The Consent Decree takes effect on the date it is entered by the Court.  It is the parties' intent that the SEP and attorneys' fees and costs payments will not be made until after any potential appeal is resolved.  This Consent Decree shall terminate sixty (60) days following completion of all obligations in paragraphs 7a, 7b, 7d, 7e, and 7f.

13. This Consent Decree may be modified only upon the written consent of the Parties and the approval of the Court.

14. The rule of construing ambiguities against the drafting party shall not apply to this Consent Decree.

15. If for any reason the Court should decline to approve this Consent Decree in the form presented, this Consent Decree and the settlement embodied herein shall be voidable at the sole discretion of either Party.  The Parties agree to continue negotiations in good faith in an attempt to cure any objection raised by the Court to entry of this Consent Decree.

16. Notifications or copies required by this Consent Decree to be made to Plaintiff shall be mailed to:  Columbia Riverkeeper, Attn:  Lauren Goldberg, 724 Oak Street, Hood River, OR 97031.  Notifications required by this Consent Decree to be made to Defendant shall be mailed to:  RSG Forest Products, Inc., c/o James Benedict, Cable Huston Benedict Haagensen &

/ /

Lloyd, LLP, 1001 SW Fifth Avenue, Suite 2000, Portland, OR 97204.

Dated and entered this 11th day of August, 2010,

*[signature: Robert J. Bryan]*

ROBERT J. BRYAN
United States District Judge

Columbia Riverkeeper

Signature: _____/s/_____

Title: _____

Date: _____

RSG Forest Products, Inc.

Signature: ____/s/_____

Title: _____

Date: _____